Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com
David W. Hall (SBN 274921)
dhall@hedinhall.com
Hedin Hall llp
Four Embarcadero Center, Suite 1400
San Francisco, CA  94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
achang@bottinilaw.com
Yury A. Kolesnikov (SBN 271173)
ykolesnikov@bottinilaw.com
Bottini & Bottini, inc.
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE RENVALL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALBERTSONS COMPANIES LLC,<br><br>Defendant. | Case No. '18 CV0809 H   NLS<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Katie Renvall, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1.      Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Albertsons Companies LLC in negligently, knowingly, or willfully transmitting unsolicited, autodialed SMS or MMS text messages, *en masse*, to Plaintiff's cellular device and the cellular devices of numerous other individuals across the country, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over this putative class action lawsuit pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3.      Personal jurisdiction and venue are proper in this district because Plaintiff's claims arose in substantial part in this district and because Plaintiff resides in this district.   Defendant directed an unsolicited text message to Plaintiff's cellular device in this district by transmitting the message to a cellular telephone number that bears an area code (619) corresponding to a location in this district.   The text message sent by Defendant was received by Plaintiff on her cellular device in this district.   Defendant also operates and maintains numerous brick-and-mortar grocery stores in this district.

## PARTIES

4.      Plaintiff is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(39) and a citizen and resident of San Diego, California.

5.      Defendant Albertsons Companies LLC is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).   Defendant is the second-largest supermarket chain in North America and does business throughout the United States, including in this district.   Defendant maintains its corporate headquarters in Boise, Idaho.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6.      To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991.   The TCPA prohibits, *inter alia*, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called.  And in the case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by applicable regulations, the TCPA requires the "prior express written consent" of the called party before initiating such calls or texts via an autodialer.

7.      According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because receiving them is a greater nuisance and invasion of privacy than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

8.      One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones.   Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds — from coupons to phishing schemes — sent directly to user's cell phones."[1]

---

[1]      Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited May 21, 2015).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9.     SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received.  Because wireless telephones are carried on their owners' persons, SMS and MMS text messages are received virtually anywhere in the world.

10.    Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

11.    Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power, and thus shortens the battery life, of the recipient's cellular device; and requires expending a quantifiable amount of energy (*i.e.*, electricity) to recoup the battery power lost as a result of receiving such a message.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12.    Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (619) ***-5024 (the "5024 Number").  The 5024 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

13.    On or about March 15, 2018, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, an SMS or

- 4 -

MMS text message advertisement to the 5024 Number without Plaintiff's express consent, written or otherwise.  The text message transmitted by Defendant to the 5024 Number is depicted below:



14.    The hyperlink contained within the above-depicted text message, http://bit.ly/2zcbQgN, is leased or owned, and is operated and maintained, by Defendant.

15.    When visited, the URL http://bit.ly/2zcbQgN re-directs to another website,   https://www.safeway.com/CMS/account/register/?bannerId=alberts ons&cmpid=sms_reg_alb_POS_wk04, also owned and operated by Defendant, at which Defendant requests that the visitor register for Defendant's "Just for U" and "Gas Rewards" services by submitting various personal information, in order for the Defendant to more effectively market its goods and services. Specifically, this registration website informs visitors that, by completing the registration form, "[y]ou're one step away from unlocking great savings!" –

including "personalized deals," "digital coupons," "free products," "gas reward points," and "discounts automatically at checkout."[2]

16.     Defendant's registration website further states that, *inter alia*, "**If you opted into 46395 you can opt out at any time.**  Text HELP to 46395 for help.  Text STOP to 46395 to cancel.  Message and data rates may apply.  Maximum of 4 messages per month.  *See* Terms of Use and Privacy Policy."[3]  Thus, Defendant appears to acknowledge on its own registration website that individuals will receive text messages directing them there without ever having opted in to receive Defendant's invasive, automated text messages in the first place, as happened to Plaintiff here.

17.     The "Privacy Policy" hyperlink on Defendant's registration website links the visitor to another website which states, *inter alia*, that "you may opt out of receiving [text messages] by using the method provided in the … text message[.]"[4]  However, the March 15, 2018 text message sent by Defendant to the 5024 Number contained no method for Plaintiff to instruct Defendant to stop sending her text messages.

18.     The source of the unsolicited text message advertisement that Defendant sent to the 5024 Number was "46395", which is a short code leased by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message marketing program.

19.     Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives a text message, the unsolicited SMS or MMS

---

[2]     "Registration," Albertsons Companies LLC, *available at* https://www.safeway.com/CMS/account/register/?bannerId=albertsons&cmpid=sms_reg_alb_POS_wk04 (last accessed April 24, 2018).

[3]     *Id.* (emphasis added).

[4]     "Privacy Policy," Albertsons Companies LLC, *available at* https://www.albertsons.com/privacy-policy/ (last accessed April 24, 2018).

- 6 -

text message that Defendant transmitted to Plaintiff's cellular device invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion upon receipt. Plaintiff became distracted and aggravated as a result of receiving Defendant's unsolicited text message advertisement.

20.     Numerous other consumers have voiced grievances to Defendant on social media after having received the same exact message Plaintiff received from Defendant, during roughly the same period of time.  For example:



21.     All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the 5024 Number occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

22.     Specifically, Defendant utilized an "automated telephone dialing system" because the text messages to the 5024 Number were sent from "46395", which is a short code telephone number used to message consumers *en masse*; because Defendant's automated dialing equipment includes features

substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention.

23.    And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other putative class members in an automated fashion and without human intervention, with hardware and software that stores, produces and dials random or sequential numbers.  In fact, on Defendant's "Privacy Policy" website, which contains an "updated" date of April 13, 2018, Defendant admits that, *inter alia*, its text messages "may be sent by automated means."[5]

24.    The complained of text message sent by Defendant to the 5024 Number on March 15, 2018 constituted an "advertisement" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendant sent the text message in order to advertise the commercial availability of its "Just for U" service and "Gas Rewards" service, as well as its mobile messaging service itself, and also because Defendant sent the text message for the purpose of advertising the sale of its grocery and gas goods to Plaintiff in the future.

25.    Plaintiff never provided her "prior express written consent" or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant to transmit SMS or MMS text messages to the 5024 Number by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

---

[5]    "Privacy Policy," Albertsons Companies LLC, *available at* https://www.albertsons.com/privacy-policy/ (last accessed April 24, 2018).

1

## CLASS ALLEGATIONS

2

26.    Class Definition. Plaintiff brings this civil class action on behalf of

3

herself individually and on behalf of all other similarly situated persons as a

4

class action pursuant to Federal Rule of Civil Procedure 23. The "Class" which

5

Plaintiff seeks to represent is comprised of and defined as follows:

6

7

8

9

> All persons within the United States who, between
> April 27, 2014 and the present, received one or more
> SMS  or  MMS  text  message(s)  from  Albertsons
> Companies LLC or an affiliate, subsidiary, or agent of
> Albertsons Companies LLC and who did not provide
> Albertsons  Companies  LLC  prior  express  written
> consent to receive such SMS or MMS text message(s).

10

27.    Defendant, its employees, and agents are excluded from the Class.

11

28.    Plaintiff reserves the right to modify the definition of the Class (or

12

add one or more subclasses) after further discovery.

13

29.    Plaintiff and all Class members have been impacted and harmed by

14

the acts of Defendant or its affiliates or subsidiaries.

15

30.    This Class Action Complaint seeks injunctive relief and monetary

16

damages.

17

31.    This action may properly be brought and maintained as a class

18

action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class

19

action    satisfies    the    numerosity,    typicality,    adequacy,    commonality,

20

predominance, and superiority requirements.

21

32.    Upon application by Plaintiff's counsel for certification of the Class,

22

the Court may also be requested to utilize and certify subclasses in the interests

23

of manageability, justice, or judicial economy.

24

33.    Numerosity. The number of persons within the Class is substantial,

25

believed to amount to tens of thousands of persons dispersed throughout the

26

United States. It is, therefore, impractical to join each member of the Class as a

27

named Plaintiff. Further, the size and relatively modest value of the claims of the

28

individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

34.    Typicality. Plaintiff received at least one text message through the use of an automatic telephone dialing system, without providing prior express written consent to the Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

35.    Adequacy. As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

36.    Competency of Class Counsel. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action.  Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other data privacy and consumer protection statutes.

37.    Commonality and Predominance. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class

- 10 -

member to Class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

b) Whether such text messages were sent using an "automatic telephone dialing system";

c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

d) Whether the complained of conduct was knowing or willful;

e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

38.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory

judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones.  The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

39.    Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

40.    Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final

injective relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
NEGLIGENT VIOLATION OF THE TELEPHONE
CONSUMER PROTECTION ACT
(47 U.S.C. § 227)

41.    Plaintiff incorporates by reference paragraphs 1-40 of this Class Action Complaint as if fully stated herein.

42.    The foregoing acts and omissions constitute negligent violations of the TCPA by Defendant, including but not limited to violations of each of the above-cited provisions of 47 U.S.C. § 227.

43.    As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

44.    As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

45.    Plaintiff and Class members also seek an award of attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
KNOWING AND/OR WILLFUL VIOLATION OF THE
TELEPHONE CONSUMER PROTECTION ACT
(47 U.S.C. § 227)

46.    Plaintiff incorporates by reference paragraphs 1–40 of this Class Action Complaint as if fully stated herein.

47.    The foregoing acts and omissions by Defendant constitute knowing or willful violations of the TCPA, including but not limited to violations of each of the above-cited provisions of 47 U.S.C. § 227.

48.    As a result of alleged knowing or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

49.    As a result of Defendant's knowing or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, treble damages of up to $1,500.00 for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

50.    Plaintiff and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment in her favor, as follows:

1.    Injunctive relief prohibiting such violations of the TCPA in the future;

2.    As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member $500.00 in statutory damages for each and every text message that violated the TCPA;

3.    As a result of the alleged willful or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member treble damages, as provided by the statute, of up to $1,500.00 for each and every text message that violated the TCPA;

4.    An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

5.      An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  April 27, 2018

Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)

By: <u>s/ Francis A. Bottini, Jr.</u>
        Francis A. Bottini, Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:    (858) 914-2002

HEDIN HALL LLP
Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com
David W. Hall (SBN 274921)
dhall@hedinhall.com
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone:   (415) 766-3534
Facsimile:    (415) 402-0058

*Counsel for Plaintiff and the Putative Class*